IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ISRAEL VASQUEZ, #520750 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 9:08cv27 |
| | § | |
| CHAIRMAN OF CLASSIFICATION- | § | |
| ADMINISTRATION BUILDING, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Israel Vasquez, a prisoner confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. He is suing the Chairman of Classification of the prison system, Unit Chief of Classification M. McLin, Classification Officer M. Duff and Sgt. Sells. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on February 1, 2008. The Plaintiff alleged that his housing assignments at the Polunsky Unit have placed his life in danger. On May 15, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The

Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Chip Satterwhite, Assistant Wardens Edgar Baker and Billy Hirsch and Nurse Thomas Maciel testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff is a 62 year old Hispanic inmate who has been in and out of the Texas prison system since the 1960's. During his early periods of incarceration, he was a turnkey, building tender and informant for the administration. He testified that he has a lot of enemies due to his past, which led officials at several units to assign him to protective custody. His travel card confirms he was assigned to protective custody at several units. He arrived at the Polunsky Unit in 2005. He was not assigned to protective custody. He noted that the Polunsky Unit does not even have protective custody. Warden Hirsch confirmed that the unit does not have protective custody. The Plaintiff believes that his life is in danger at the Polunsky Unit since he is not confined in protective custody.

The Polunsky Unit has two general population housing areas, which are designated A-Side and B-Side. A-Side has a lower level of security, while B-Side houses close custody and medium custody level inmates. Major Miller assigned the Plaintiff to A-Side upon his arrival at the Polunsky Unit. On January 16, 2006, the Plaintiff had an altercation with Sgt. Gilbert, which is the subject of another lawsuit, Civil Action Number 9:07cv236. The Plaintiff was found guilty of assaulting an officer. The incident led to the Plaintiff being reassigned to B-Side housing. The Plaintiff complained that he has been repeatedly housed with African-American inmates since his reassignment. He asserted that the African-American inmates have sexually assaulted him. He does not want to be housed in a cell with an African-American. He noted that he is a homosexual, and he wants to be housed with first time inmates who are homosexual. Warden Hirsch testified that the Polunsky Unit does not have a safekeeping area for homosexual inmates, although there are other

units with such safekeeping areas.  He also testified that classification has designated him eligible for being in a racially integrated cell.  Hirsch added that classification will conduct an investigation if he submits a request noting that he should not be housed with an African-American inmate.

The Plaintiff stated that he was raped by inmate Willis on K-Pod.  He was subsequently raped by inmate Venegas.  He was beaten by inmate Erasmo Smithwick in January, 2008.  He filed grievances and wrote to Warden Alford and the Chairman of Classification.  He stressed that he has been harassed and sexually assaulted at the Polunsky Unit.  He asked to be transferred to another unit and housed in safekeeping with another homosexual.  He was placed in transient status while the administration conducted a life endangerment study.  After the study was completed, Sgt. Sells returned him to the cell with Smithwick.  The Plaintiff stated that he pled with Sgt. Sells not to place him in the cell, but Sgt. Sells forced him to go into the cell.  Smithwick then assaulted him again.

The Plaintiff stated in his original complaint that he sued the Chairman of Classification because he assigned him to the Polunsky Unit where he has been raped and beaten.  He sued Unit Chief of Classification McLin because he refused to house him with someone like himself.  He testified that McLin should have transferred him to an area for homosexuals.  He also sued Classification Officer Duff because he refused to house him with someone like himself.  He added that Duff has repeatedly reminded him of Sgt. Gilbert when he complained about his housing assignment.  It is noted that Sgt. Gilbert was disciplined as a result of the altercation with the Plaintiff, and he believes that officers blame him for Sgt. Gilbert's departure.  The Plaintiff testified that he sued Sgt. Sells for returning him to a cell with inmate Smithwick.  He testified that the Unit Classification Committee did not tell Sgt. Sells to place him in that particular cell; instead, Officer Sells took it upon himself to place him back in the cell with Smithwick.

Warden Hirsch testified that lieutenants and captains may house inmates anywhere they want to within the classification guidelines. He noted that because the life endangerment study did not support the Plaintiff's claims, security personnel returned him to the same custody level. Warden Hirsch testified that the study conducted in January, 2008, mentioned Gilbert, but it did not mention anything about sexual assaults. The Plaintiff would have been moved if he had claimed that Smithwick had sexually assaulted him. In response, the Plaintiff reiterated that Sgt. Sells made the decision on his own to house him again with inmate Smithwick.

The Court has reviewed the Plaintiff's prison records submitted during the hearing with his permission. The most recent life endangerment study was begun on January 9, 2008. The study was begun in response to a grievance filed by the Plaintiff, who asserted that he had been threatened in his housing area. The Plaintiff was interviewed on January 19, 2008. He listed his assailants as Erasmo Smithwick, Richard Willis, inmate Vengas, Sgt. Gilbert, Sgt. Sells and Officer Dezeeuw. He asserted that he had been beaten and locked down. He asked to be assigned to safekeeping. Sgt. Wortham filed an investigation summary on January 30, 2008. He noted that the Plaintiff was moved to a different cell on January 9, 2008. He noted that the Plaintiff indicated that he had a physical altercation with inmate Smithwick prior to the move. The Plaintiff asserted that inmates are out to get him because of his past as a building tender and because he is a homosexual. He also alleged that security personnel were out to get him, including Sgt. Sells, Sgt. Gilbert and Officer Dezeeuw. Sgt. Wortham noted that the Plaintiff was unable to present any new information in support of his claims. He noted that the Plaintiff was assigned to a single man cell at that time. His conclusion was that the Plaintiff was unable to substantiate his allegations. UCC Chairperson B. Hutchison approved the finding and denied the Plaintiff's requests due to a lack of evidence.

4

A previous life endangerment study was concluded on June 18, 2007. The Plaintiff made similar allegations that his life was in danger because he had been a building tender. The complaint was characterized as repetitious and denied. Sgt. Sells was listed as the investigating officer. He found that the claim of life endangerment was not supported by any evidence. An unidentified major concurred with the finding. Another study conducted in April, 2007, likewise concluded that there was a lack of evidence.

<u>Discussion and Analysis</u>

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.* at 843 n.8. A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with

5

<065>
</065>
<065>
</065>

the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).

In the present case, the Plaintiff has sued an unidentified Chairman of Classification in Huntsville because he assigned the Plaintiff to the Polunsky Unit where he was raped and beaten. The Plaintiff, however, has not alleged any facts showing that the Chairman of Classification knew that he faced a substantial risk of serious harm at the Polunsky Unit and disregarded such risk. Instead, the Plaintiff is trying to hold the Chairman of Classification strictly liable because he was raped and beaten. "Under § 1983, supervisory officials are not vicariously liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Rodriguez v. Lozano*, 108 Fed. Appx. 823, 830 (5th Cir. 2004). Although a supervisor not personally involved in an incident can be liable for failure to train or supervise his subordinates, the Plaintiff has not made any such allegations regarding the unidentified Chairman of Classification. *Id.* Similarly, the Plaintiff complained that Unit Chief of Classification McLin failed to house him with an inmate like himself, another homosexual. The Plaintiff failed to allege any facts showing that McLin knew he faced a substantial risk of serious harm in his housing assignment and disregarded such risk. The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact with respect to the unidentified Chairman of Classification and Unit Chief of Classification McLin. The claims against them should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff stated that he sued Classification Officer Duff because he too failed to house him with another homosexual inmate like himself. If the Plaintiff's claims against Duff ended here, then such claims would likewise have to be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The

Plaintiff, however, added that Duff repeatedly reminded him of Sgt. Gilbert when he complained about classification matters.  The Plaintiff testified that Duff made the statement because he blamed the Plaintiff for the events that led to Sgt. Gilbert's departure.  This allegation against Duff gives rise to an inference that he was deliberately indifferent about the Plaintiff's plight and simply did not care whether other inmates attacked or sexually assaulted him.  Officer Duff should be ordered to respond to the deliberate indifference claim made against him

Finally, the Plaintiff stated that he sued Sgt. Sells for placing him back in the cell with inmate Smithwick.  Sgt. Sells was aware of the Plaintiff's problems; nonetheless, he allegedly still took it upon himself to return the Plaintiff to the cell.  He ignored the Plaintiff's pleas not to place him back in the cell with Smithwick.  The Plaintiff stated that was assaulted right after he was returned to the cell.  The facts as alleged support a deliberate indifference claim against Sgt. Sells.  It is accordingly

**ORDERED** that the Plaintiff's claims against the unidentified Chairman of Classification and Unit Chief of Classification M. McLin are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  It is further

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claims against Classification Officer M. Duff and Sgt. Sells.

So **ORDERED** and **SIGNED** this **23** day of **May, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE